# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE MONTOYA,<br><br>   Plaintiff,<br><br> v.<br><br>TIME WARNER TELECOM HOLDINGS INC. and DOES 1 through 20 inclusive,<br><br>   Defendants. | No. 1:08 -CV-00227 AWI-DLB<br><br>**ORDER GRANTING DEFENDANT TIME WARNER TELECOM HOLDINGS INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Document No. 18) |

  Plaintiff Felipe Montoya ("Montoya") has sued Defendant Time Warner Telecom Holdings, Inc., ("TWT") asserting claims for age discrimination under the California Fair Employment and Housing Act ("FEHA"), (Cal. Gov. Code Section 12900), wrongful termination in violation of public policy, defamation, and unfair business practice. TWT moves for summary judgment. As discussed below, Defendant's motion will be granted, as the court finds that the undisputed evidence shows that TWT acted for legitimate, non-discriminatory reasons.

# FACTUAL BACKGROUND[1]

A.  <u>Montoya's Hire</u>

Montoya was originally hired in 1998 by a company called GST.  Thereafter, TWT bought out GST.  TWT delivers communication packages, including long distance and high speed internet to business customers in many states, including California.  Montoya was employed as a Network Technician for TWT at the Fresno office.  As a Network Technician, Montoya was responsible for installing, servicing, and maintaining communication network systems.  Arnold Baltis ("Baltis") was Montoya's supervisor until Baltis was replaced by David Yates ("Yates"), a former Central Office Technician.  From approximately March 2005 to March 2006, Montoya reported directly to Kevin McDaniel ("McDaniel"), the Operations Director, who oversaw the Fresno office.  <u>See</u> Pl. Dep. 76:24-77:10.  Montoya testified that he had no problems working with McDaniel as his direct supervisor.  <u>See</u> Pl. Dep. 77:11-14.

In March 2006, TWT created an Operations Manager position to oversee all technicians.  The Operations Manager reported to McDaniel.  Yates, who also reported to McDaniel, applied for the position, but Montoya did not.  <u>See</u> Pl. Dep. 50:23-25; McDaniel Dep. 122:9-20.  Yates was hired as Operations Manager in March 2006.  <u>See</u> Pl. Dep. 50:23-25; McDaniel Dep. 122:9-20.  At this point, Yates became Montoya's supervisor and McDaniel remained Yates' supervisor.  <u>See</u> McDaniel Dec. ¶ 3.  Montoya testified that he had no problems working with Yates as a peer, and he considered Yates a friend.  <u>See</u> Pl. Dep. 49:14-18, 73:14-16, 77:11-14.  Plaintiff, however, admits that on one occasion, Yates was discussing Montoya's attendance with him and Montoya admits he told Yates to "fuck off" or he may have said "fuck you."  <u>See</u> DUMF

---

[1] "DUMF" refers to Defendants' Undisputed Material Fact.  "PUMF" refers to Plaintiff's Undisputed Material Fact.  The court notes that Montoya generally does not cite to any evidence or undisputed facts in the factual background of his opposition.  Plaintiff fails to provide citations for most of his assertions in his opposition.  The court is not required to search through the record independently to ascertain a party's assertions.  <u>See</u> <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003) ("General references without page or line numbers are not sufficiently specific"); <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

No. 2; Pl. Dep. 56:6-24. On another occasion, Yates asked Montoya to call a TWT employee in the company's National Operations Center ("NOC"), and Montoya responded via e-mail "talking to him already ... get with the plan." See Daniel Handman ("Handman") Decl., Exh. H. During the relevant time period, Meredith Mackert ("Mackert") was the human resources director at TWT.

### B.  Montoya's Performance and First Written Warning

Montoya alleges he was employee of the month in June 2006. McDaniel testified that he approved Montoya for merit based increases, while McDaniel was Montoya's supervisor. See McDaniel Dep. 115:25-116:6. Both Yates and McDaniel gave Montoya positive performance reviews as recently as August 1, 2006. See Yates Dep. 29:25-30:5; McDaniel Dep. 144:12-18. TWT asserts that in August 2006, Montoya's work performance began to decline. On August 7, 2006, Montoya and two other, younger TWT technicians were sent to install hardware for a TWT client. See Pl. Dep. 115:24-116:6. Montoya testified that he and his colleagues did not pay "to[o] much attention" to the installation instructions. See Handman Decl. Exh. E. Montoya and his colleagues installed different fuses than called for in the instructions because "it was common practice in the previous years." See Handman Decl. Ex. E. On August 16, 2006, the hardware that was installed became non-operational because the wrong size fuses were installed. See Yates Dep. 66:3-67:18. Yates declared that he gave a verbal warning to all three employees for the faulty installation. See Yates Decl. ¶ 4.[2]

On August 18, 2006, a service outage occurred for an entirely different TWT customer in the Fresno area. See Yates Dep. 73:6-74:5. Yates reviewed a "trouble ticket" from a software monitoring program on the TWT network (the "Net-X system")[3], which indicated that Montoya

---

[2] Montoya testified that he does not remember receiving any warning. See Pl. Dep. 114:13-15. It is undisputed, however, that on August 17, 2006, Yates gave a verbal warning to the two younger technicians who worked on the installation with Montoya. See Pl. Dep. 122:22-123:3; Yates Dep. 35:4-14; 59:8-18.

[3] The Net-X system is a monitoring system TWT had in place for detecting alarms on its network.

3

had caused the unplanned service outage. See Yates Dep. 72:7-11, 74:3-22. Montoya admitted that he caused the unplanned service outage but maintains it was an accident. See Handman Decl., Exh. E.

TWT asserts that Montoya failed to detect the August 18, 2006 service outage on the Net-X system because he did not log into Net-X. See DUMF Nos. 11-13. Before the August 18, 2006 outage, Yates told Montoya that he was expected to log into Net-X three times a day. See Yates Dep. 35:4-14; 36:14-18.[4] Montoya admitted "I will admit to not signing into Net-X at the time in question." See DUMF No.12; Pl. Dep. 124:9-13; Handman Decl. Ex. E.[5]

On August 22, 2006, Montoya was given a written warning, reprimanding him for his conduct with respect to the August 7, 2006 and August 18, 2006 unplanned outages. See Pl. Dep. 121:13-122:6; McDaniel Dep. 51:22-52:1-5; McDaniel Decl., ¶7, Exh. C. Yates and McDaniel met with Plaintiff to discuss the written warning. See McDaniel Dep. 55:10-56:10; Yates Decl. ¶5. Mackert was on the phone for the written warning discussion. See McDaniel Dep. 57:8-17. Montoya asked Yates "why he had said that I had done this [caused the first outage]," and that Yates responded that Montoya had put in the wrong fuses. See Pl. Dep. 129:22-130:13. Montoya responded to Yates, "[i]t's the fuses we have been using for years." See Pl. Dep. 129:22-130:13. Montoya alleges that he remembers nothing more of the conversation. See Pl. Dep. 129:22-130:13. Yates and McDaniel both testified that they presented Montoya with the written warning, discussed both outages with Montoya, and asked Montoya if he understood the warning, which he acknowledged that he did and invited Montoya to offer any comments he had and Montoya opted not to do so. See DUMF Nos.17-18.

---

[4] Montoya testified that he cannot remember if Yates told him to log into Net-X three times daily. See Pl.'s Dep. 117:19-22. Plaintiff, however, does admit, that he was told to log in. See Pl. Dep. 129:16-21.

[5] Montoya attempts to dispute this fact. Montoya alleges that although he did not log in to Net-X at the time in question, he did not log in because: (1) his log in password was not working; (2) Yates and McDaniel were monitoring the alarms during the time in question; and (3) he was focused on delivery of services because the company had too many orders. See Handman Decl. Ex. E; Pl.'s Opp'n. at page 10. Despite Montoya's explanations for why he did not log into Net-X, the fact that Montoya did not log into Net-X at the time in question remains undisputed.

4

C.     Final Written Warning

On December 20, 2006, Yates received a call from the NOC advising him that an alarm had gone off indicating that service had been shut down for five TWT customers. See Yates Dep. 87:23-88:10; Yates Decl. ¶6. In total, service was down for these five TWT customers, including a hospital, for at least 20 minutes. See Pl. Dep. 164:6-9; Yates Dep. 58:10-59:3, 91:7-10. On December 20, 2006, Montoya was "in the equipment trying to see if [he] could get visibility to the network." See Handman Decl., Exh. F. By "in the equipment," Montoya was referring to the equipment that went down and caused an outage for five TWT customers. See Pl. Dep.167:7-20. Yates requested assistance from the NOC to determine the cause of the outage. See Yates Decl. ¶ 7. The NOC reported to Yates that the outage could be traced to the IP address assigned to Montoya's computer. See Carl Gard Decl. ¶ 2, Exh. A. Based on the NOC's report, and given Yates' knowledge that he and Montoya were the only TWT employees present in the Fresno office at the time, Yates concluded that Montoya was responsible for causing the outage. See Yates Dep. 61:7-12, 64:6-10; Yates Decl. ¶6.[6]

On January 5, 2007, Yates and McDaniel met with Montoya and gave Montoya a final written warning for causing the December 20, 2006 unplanned service outage. See Pl. Dep. 151:25-152:17; Yates Decl. ¶ 8. Mackert participated in the meeting by telephone. See Yates Decl. ¶ 8. The final written warning stated: "Please be advised that failure to comply with this warning or violation of any company policy will not be tolerated. You are expected to show immediate and sustained improvements in the concerns outlined above. Failure to comply will result in further disciplinary action, up to and including termination." See McDaniel Dec. ¶ 7, Exhibit D.

---

[6]Montoya attempts to dispute that he was responsible for the December 20, 2006 outage by arguing that he does not remember if he took the ECI port out of service and took down services for five customers. See Plaintiff's Dep.159:8-16. Simply because Plaintiff cannot remember whether he caused the outage does not establish a genuine issue of fact.

### D. January 5, 2007 Incident

Montoya had been responsible for installing a number of services for Western Fleet, a TWT customer. See Pl. Dep. 173:24-174:4, 174:25-175:9. On January 5, 2007, Yates received a call from Western Fleet, who informed him that their fax line was not working. See Yates Decl. ¶9. Yates asked Montoya to go to the customer location to fix the fax line. See Handman Decl., Exh. G. Montoya maintains that he went to the customer site, fixed the fax line, and assured Western Fleet individuals that "the service was ready for them." See Handman Decl., Exh. G. Yates testified that on January 9, 2007, he learned that the fax line was still not working. See Yates Decl. ¶9. Yates concluded that Montoya failed to correct the fax line because Western Fleet complained to TWT that their line was still not working after Yates had instructed Montoya to service the line. See DUMF Nos. 28-31; Yates Decl. ¶9-10.[7] Ultimately, Yates sent a different technician to correct the problem. See Yates Dep. 28:25-29:3; Pl. Dep. 172:22-173:11.

### E. January 8, 2007 Incident

TWT asserts that soon after Montoya was given the final written warning, Montoya violated TWT's policies on safekeeping company property. On January 8, 2007, Plaintiff left his TWT-provided laptop in his TWT-provided truck overnight at his home. The truck was broken into, and the laptop was stolen. See Pl. Dep. 39:24-40:11. TWT asserts that on December 2, 2005, McDaniel sent an email to all technicians who reported to him, including Montoya, which stated: "If you have a laptop, take it home with you EVERYDAY! No exceptions! When you get home, take it out of your truck, and into the house with you. If you have test equipment in your

---

[7]Montoya responds that this fact is disputed. Montoya, however, fails to cite to any admissible evidence, statement of disputed fact, deposition testimony, or affidavit. Montoya relies on personal notes he took after being disciplined. In his unsworn notes, Montoya wrote that the fax line was not working due to a vendor issue and not a TWT issue. "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). As such, these unsworn, self-serving allegations do not create a genuine issue of material fact. There is no indication that TWT saw the notes. Further, the notes do not dispute what Yates concluded.

6

truck, remove it as well, and place inside your home." See McDaniel Decl. ¶4, Exh. A; McDaniel Dep. at 22:2-10. TWT contends that on June 1, 2006, TWT sent an email to all technicians nationally that attached a "Field Operations Tool and Test Equipment Security Policy." See McDaniel Decl. ¶5, Exh. B. That security policy provided, "No company PC's or laptops may be left in a company vehicle overnight. No test equipment or tools with a value over $5000 may be left in a company vehicle overnight." See McDaniel Decl. ¶ 5, Exh. B.[8] Montoya admits that failure to safeguard his company property "was an error on my part." See Pl. Dep. 40:12-15.

     F.     Termination

TWT asserts that after the January 5, 2007, and January 8, 2007, incidents, McDaniel and Yates made the decision to recommend that the company terminate Montoya's employment. See DUMF No. 37. McDaniel and Yates spoke with Mackert and explained Montoya's work-related issues. See DUMF No. 37-38. Mackert concluded that McDaniel and Yates' termination recommendation was warranted, and she approved Montoya's termination. See DUMF No. 39. On January 12, 2007, Montoya was called into a meeting with Yates, McDaniel, Mackert (who attended by telephone), and Jeff Jarvis[9] (who also attended by telephone). See Pl. Dep.168:19-169:10. At this meeting, Montoya was given a termination letter. Id. McDaniel and Yates contend that Montoya was terminated for the reasons set forth in the written warning, the final written warning and the termination letter, namely his performance problems dating back to the first written warning in August 2006, and culminating in the violation of TWT's safekeeping of equipment policy. See DUMF No. 41; Yates Dep. 17:6-14; McDaniel Dep. 43:8-14.

---

[8] Montoya attempts to dispute that he received the policy. Montoya testified that he "do[es] not remember seeing" the policy. See Pl. Dep. 35:25-36:8. Again, simply because Plaintiff cannot remember whether he received the policy does not establish a genuine issue of fact. Moreover, Montoya testified that the emails look like something he may have received. See Pl. Dep. 37:23-25. Lastly, Montoya's name appears as a recipient on the December 2, 2005 email, and the June 1, 2006 email distributing the policy.

[9] Jeff Jarvis was McDaniel's supervisor at the time in question.

## PROCEDURAL HISTORY

On December 20, 2007, Montoya filed this present suit against TWT in the California Superior Court, County of Fresno, alleging causes of action grounded in age discrimination, wrongful termination in violation of public policy, defamation, and unfair business practice. Montoya seeks compensatory damages including lost wages and/or employment benefits, mental and emotional distress damages, and punitive damages. TWT removed to this court on February 14, 2008. TWT moves for summary judgment and seeks to have all four of Montoya's causes of action dismissed.[10]

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must

---

[10] Montoya makes objections on various grounds to some of the evidence proffered by TWT in support of this motion. Except where otherwise noted, such evidence is immaterial to the court's analysis of Defendant's motion or the objections are without merit. The court has relied on admissible evidence in rendering this decision; any specific evidentiary concerns pertinent to the decision are addressed below. Factual assertions by TWT which are controverted with evidence by Montoya are not relied upon.

affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

     The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

9

"motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

## DISCUSSION

### A. Age Discrimination

FEHA outlaws employment discrimination against individuals over 40.  See Cal. Gov't Code §12941.  "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination." Guz v. Bechtel National, Inc., 24 Cal.4th 317, 354 (2000).  "A plaintiff must first establish a prima facie case of discrimination.  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision.  Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994), citations omitted; Morgan v. Regents of Univ. Of Cal., 88 Cal. App.4th 52, 68-69 (2000).

#### 1. Montoya's Prima Facie Case

Defendant concedes for purposes of this motion that Plaintiff has made a prima facie case. See Def.'s Motion for Summary Judgment at pages 9-10.

#### 2. TWT's Legitimate Non-Discriminatory Rationale

Once a FEHA plaintiff has demonstrated a prima facie case, the burden shifts to the

employer to articulate some legitimate non-discriminatory reason for the employee's rejection. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Morgan, 88 Cal. App.4th at 69. '[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); see Guz, 24 Cal.4th at 356. This is merely a burden of persuasion, not proof, as the ultimate burden of persuasion resides with the employee. St. Mary's 509 U.S. 508; see Villiarimo v. Aloha Island Air., Inc., 281 F.3d 1054, 1062 (9th Cir. 2002); Guz, 24 Cal.4th at 355-56. The employer need only articulate, not prove a legitimate, non-discriminatory reason for deciding to terminate the plaintiff. See Univ. of Southern Cal. v. Superior Court, 222 Cal. App. 3d 1028, 1039 (1990)(employer met its burden "through the introduction of admissible evidence [setting forth] the reasons for the plaintiff's rejection.").

Moreover, courts "only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." Villiarimo, 281 F.3d at 1062; Guz, 24 Cal.4th at 358 (reasons need not be "wise or correct"); see also King v. United Parcel Service, Inc., 152 Cal. App.4th 426, 436 (2007) ("[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case.").

TWT has met its McConnell Douglas burden. Specifically, Yates and McDaniel made the decision to terminate his employment because they concluded that Montoya engaged in the following misconduct:

(1) he told Yates to "fuck off" and "get with the plan" (See DUMF Nos. 2,3);

(2) he caused two unplanned outages in August 2006 (See DUMF Nos. 4-7, 8-10);

(3) he failed to log into Net-X after being told to do so by Yates and McDaniel (See DUMF Nos. 11-13);

(4) he caused an unplanned outage for five TWT customers on December 20, 2006 (See DUMF Nos. 19-25);

11

(5) he failed to fix a non-working fax line for Western Fleet (See DUMF Nos. 28-31); and

(6) he violated company policy on safekeeping equipment (See DUMF Nos. 32-36).

Yates and McDaniel testified that the written warning, the final written warning and the letter of termination detailed all of the legitimate non-discriminatory reasons for Montoya's termination. See Yates Dep. 17:6-14; McDaniel Dep. 43:8-14. Thus, TWT has met its burden by articulating legitimate non-discriminatory reasons for deciding to terminate Montoya, which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. See Hicks, 509 U.S. at 507; Guz, 24 Cal.4th at 356; King,152 Cal. App. 4th at 436; Univ. of Southern Cal., 222 Cal. App. 3d at 1039.

Moreover, Montoya admitted much of the wrongdoing. For example, with respect to Montoya's belligerent attitude towards his supervisors, Plaintiff admits that he told Yates to "fuck off," or he may have said "fuck you" when discussing Montoya's attendance. See DUMF No. 2; See Pl. Dep. 56:6-24. With respect to the August 7, 2006, unplanned service outage, Montoya acknowledged that he and his colleagues did not pay "to[o] much attention" to the installation instructions and installed different fuses than called for in the instructions because "it was common practice in the previous years." See Handman Decl., Exh. E. Regarding the August 18, 2006 unplanned outage, Montoya admitted that he caused the outage, but maintains it was "an accident." See Handman Decl., Exh. E. With respect to Yates' belief that Montoya failed to detect the August 18, 2006 outage on the Net-X system despite Yates telling him he needed to log in three times a day, Montoya admitted, " I will admit to not signing into Net-X at the time in question." See Pl. Dep. 118:22-25; DUMF Nos. 11-12. Montoya also admits that failure to safeguard his TWT provided laptop "was an error on my part." See Pl. Dep. 40:12-15. Given that Montoya admitted to much of the misconduct identified above, it supports TWT's assertion that Yates had a good faith belief that Montoya committed those acts.

Montoya merely disputes that he did not engage in some of the alleged misconduct, but fails to dispute that Yates and McDaniel had an honest belief that Montoya engaged in the misconduct that lead to his termination. However, Under FEHA, "[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the

underlying facts that is at issue in a discrimination case." See King, 152 Cal. App. 4th at 436. Therefore, TWT met its burden of production, not proof, to "articulate some legitimate, nondiscriminatory reason for [its] rejection." McDonnell Douglas, 411 U.S. at 802; see Villiarimo, 281 F.3d at 1062; Guz, 24 Cal.4th at 355-56.

### 3.   **Montoya's Evidence of Pretext**

Because TWT has met its burden of production, the burden then shifts to Montoya to prove that TWT's explanation was merely a pretext to conceal discriminatory conduct. McDonnell Douglas, 411 U.S. at 804; Villiarimo, 281 F.3d at 1062; Guz, 24 Cal.4th at 354. That is, an employee must show "a genuine factual question whether, viewing the evidence in the light most favorable to them, [the employer's] reasons are pretextual." Chuang v. Univ. of Cal. Davis, Bd. Of Trs., 225 F.3d 1115, 1126 (9th Cir. 2000); see Guz, 24 Cal.4th at 361-62. The employees' burden of proof for this step is a preponderance. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). An employee may meet this burden by directly showing the employer was more likely motivated by discriminatory intent or indirectly showing the employer's explanation is unworthy of credence. Reeves, 503 U.S. at 143; Villiarimo, 281 F.3d at 1062; Morgan, 88 Cal. App.4th at 68-69. Although Plaintiff may rely on circumstantial evidence to show pretext, such evidence must be specific and substantial evidence. See Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 661 (9th Cir. 2002); Morgan, 88 Cal. App.4th at 69.

Montoya contends that TWT's asserted reasons for terminating him are pretextual and untrue. Specifically, Montoya points to four factual issues that allegedly demonstrate the pretextual nature of the TWT's conduct: (1) Yates and McDaniel made age bias statements to him; (2) TWT did not follow TWT's internal Disciplinary Policy; (3) Yates and McDaniel never terminated a worker under the age of 40; (4) TWT forced Baltis to retire early when he was 60 years old, and then replaced him with a younger worker; and (5) Yates and McDaniel did not discipline younger employees for violations of TWT policy. See Pl. Opp'n. at pages 20-22. These contentions, analyzed individually and taken together, fail to raise a triable issue of pretext.

First, Montoya's contention that Yates and McDaniel made age bias statements is without merit. Montoya alleges that two years prior to his termination, McDaniel asked him in the copy

13

room "when are (you) going to retire." See Pl. Opp'n. at page 6.[11] Montoya alleges that he told McDaniel that he was not going to retire. Id. Montoya also alleges that before Yates became his supervisor and at least eight months before his termination, Yates said that he was able to do all the work himself and, if he could, he would get rid of the old guys or something to that effect.[12] See PUMF Nos. 134-137. Montoya, however, admits he was not sure that Yates said old guys. See Pl. Dep. 186:16-18. Moreover, in his complaint, Montoya's alleges a different version of Yates' alleged comment. In his complaint, Montoya alleges that Yates commented that he could do all of the work himself and none of "you people" were needed. See Pl. complaint ¶7.

    Even assuming Yates and McDaniel made the alleged remarks, these isolated and "'stray' remarks are insufficient to establish discrimination" without other indicia of discriminatory intent. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990). Indeed, "remarks...when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue." Smith v. Firestone Tire & Rubber Co., 875 F.2d 1325, 1330 (7th Cir. 1989); Gibbs v. Consolidated Services, 111 Cal. App.4th 794, 801 (2003); Horn v. Cushman & Wakefield Western Inc., 72 Cal. App.4th 798, 809 (1999)(holding that a "stray ageist remark" by the plaintiff's indirect supervisor who did not make the termination decision was insufficient evidence of pretext).

    Further, Plaintiff's assertion that Yates' and McDaniel's comments reflect discriminatory animus toward him is unsupported by the record. McDaniel's alleged remark was made at least two years before Montoya was terminated, and Yates' remark was made at least eight months before the termination and at a time when Yates was not Montoya's supervisor. Additionally, when McDaniel was Montoya's direct supervisor, McDaniel approved Montoya for raises and for company awards. See DUMF No. 45. Both Yates and McDaniel gave Montoya positive performance reviews as recently as August 1, 2006. See DUMF No. 46. The record reveals that

---

[11] McDaniel denies having made this statement. See McDaniel Decl. ¶8. Since this is summary judgment, the court will accept Plaintiff's version of the events.

[12] Yates denies having made this statement. See Yates Decl. ¶13. Since this is summary judgment, the court will accept Plaintiff's version of the events.

14

Yates and McDaniel treated Montoya favorably. Accordingly, Montoya fails to establish that Yates or McDaniel harbored discriminatory animus towards him.

Second, Plaintiff's contention that TWT did not follow its internal disciplinary policies is not supported by competent evidence and is refuted by Defendant's evidence. In support of his contention, Plaintiff cites to a paragraph of TWT's Disciplinary Policy, which states: "disciplinary decisions are made by considering a number of factors, including, but not limited to, the work record of the employee." See Pl. Opp'n. at page 7. Montoya alleges that nothing in his disciplinary documents suggest that his work record was considered in the decision-making process.[13]

TWT asserts that it did not deviate from its disciplinary policy because the policy provides that it is company preference that employees be given a verbal warning, a written warning, and a final written warning before terminating an employee. TWT's Disciplinary Policy, provides in part:

> **It is not required that the disciplinary steps outlined below are followed in sequence. The steps below may be bypassed entirely depending upon the severity of the performance or conduct problem....**

See DUMF No. 43 (emphasis in original). TWT asserts that it complied with its policy and disciplined Montoya progressively by presenting Montoya with a verbal warning, written warning and a final warning before his employment was terminated. Montoya disputes that he received a verbal warning. Regardless, the undisputed facts show that at, the very least, Montoya received a written warning and a final warning before his employment was terminated. Even assuming that Montoya did not receive a verbal warning, this does not show that TWT violated its policy

---

[13] Montoya alleges in his opposition that his work records were not considered. See Pl. Opp'n. at page 8. Montoya, however, does not cite to any admissible evidence, statement of disputed fact, deposition testimony, or affidavit. "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). As such, Montoya fails to establish a genuine issue of material fact.

because the policy is couched in discretionary terms and clearly provides that the disciplinary steps are not requirements and can be bypassed entirely. Moreover, at each stage of discipline, Yates and McDaniel met with Montoya and informed him of his performance deficiencies and expectations. See DUMF Nos. 17, 26-27. As such, Plaintiff's contention is not substantial evidence of pretext.

Third, Montoya's contention that Yates and McDaniel were biased against older employees because they never terminated a younger employee (See Pl. Opp'n. at page 20, section e) is unpersuasive. McDaniel and Yates both testified that, aside from Montoya, they had not terminated any employees, including employees both over and under the age of 40. See TWT's Supp. Ans. to Interrogatories Nos. 6 & 7.

Fourth, Montoya's contention that McDaniel allegedly forced Baltis to retire because Baltis was older is not supported by competent evidence, and is refuted by Defendant's evidence. Baltis testified that he "volunteered" to be laid off, and did so in response to a request by another supervisor, not Yates or McDaniel. See Baltis Dep. 26:17-27:3. Baltis also testified that he "didn't feel pressured about [his] age" at TWT. See Baltis Dep. 17:19-20. Plaintiff cites to a February 24, 2009 declaration by Baltis, in which Baltis claims he was forced to retire by McDaniel. See Baltis Decl. ¶5. Baltis' declaration, however, contradicts his prior deposition testimony. The general rule is that a "party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). Testimony is a sham if it flatly contradicts earlier testimony in an attempt to create an issue of fact to avoid summary judgment. Id. Because the declaration flatly contradicts prior testimony, it is a sham. Thus, Montoya fails to establish a genuine issue of fact as to Baltis being forced to retire by McDaniel.

Fifth, Montoya's contention that he was disciplined more harshly than other employees is not supported by sufficient evidence of pretext. Montoya alleges "network engineers other than Montoya have caused service interruptions and they were not terminated. The list goes on." See Pl. Opp'n. at page 21. Montoya, however, fails to demonstrate that these unidentified engineers who caused outages were similarly situated to him in any way. See Wall v. Nat' R.R. Passenger

16

Corp., 718 F.2d 906, 909 (9th Cir. 1983) (employees must be similarly situated in all material respects in order to be comparators for proving discrimination). Moreover, TWT notes that Montoya is employed as a Network Technician and not a Network Engineer. Thus, Montoya's comparison to the Network Engineers is irrelevant. Montoya does not present specific evidence regarding the circumstances of the outages, whether the engineers had a disciplinary history similar to Montoya, or whether the engineers performed the same job as Montoya. The record is devoid of evidence that anyone similarly situated to Montoya was disciplined any differently than him for similar conduct.

TWT does concede that most technicians have at one point or another, caused an outage for a TWT customer. See Yates Dep. 50:20-25. However, Yates testified that, unlike the outages Montoya caused, these outages were done under a maintenance window that provides customers with advance notice of the outage so they can be prepared for it. See Yates Dep. 53:13-25. By contrast, the outages caused by Montoya were unplanned and TWT's customers had no ability to plan for the outages. See Yates Dep. 57:1-59:3.

Other aspects of the case also act to dispel the suspicion of pretext. TWT notes that Montoya did not make any internal complaints (even anonymously)[14] of age discrimination within TWT during his employment with TWT; nor did Montoya mention that he suspected age discrimination in the "responses" he prepared for himself.[15] See Pl. Dep. 171:24-172:11;

---

[14] TWT has a code of conduct on the company intranet for all employees and requires annual code of conduct training. The code prohibits discrimination on the basis of any protected characteristic and outlines procedures for employees to raise such concerns including anonymous reporting options. See Mackert Decl., Exh. C. Montoya never made a complaint of age discrimination during his TWT employment. See Pl. Dep. 81:13-18, 95:17-19. Although, Montoya testified that he "may or may not have" seen the Code of Conduct, TWT records show that Montoya completed training on TWT's code of conduct, which appears to indicate that he did see the policy. See Mackert Decl., Exh. A.

[15] Montoya wrote "responses" to his written warning, final written warning and termination letter. See Handman Decl., Exhs. E, F, G. Montoya did not share his personal notes with TWT. See Pl. Dep. 125:10-126:8, 164:16-165, 170:18-172:11. Montoya claims that he wrote these responses to "clear [his] mind" and that he wrote "all he could think of" in these documents. See Pl. Dep. 171:24-172:1-11; Handman Decl., Exhs. E, F, and G.

Handman Decl., Exhs. E, F, and G.

In short, Montoya fails to meet his burden of proof because he has no evidence of pretext. Summary judgment on this claim is appropriate. See Guz, 24 Cal.4th at 354 ;Morgan, 88 Cal. App.4th at 68-69.

### B.     Wrongful Termination in Violation of Public Policy

Montoya bases his wrongful termination claim on the grounds that "by terminating Mr. Montoya, TWT required Montoya to indemnify its risk of loss due to theft." See Pl. Opp'n. at page 22. This argument fails because Montoya never made this allegation in his complaint and is introducing this argument for the first time in his opposition. See Pl. Complaint at page 6. A party cannot oppose summary judgment on grounds not in issue under the pleadings. Navajo Nation v. United States Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court."); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2005) (plaintiff could not raise claim for the first time in opposition to a summary judgment motion if it was not alleged in the complaint). Here, the only public policy Montoya identifies in his complaint is that he was discriminated against because of his age. See Pl. Complaint at ¶33. Because Montoya did not allege any other public policy violation in his complaint, Montoya is limited to the allegations he raised in his complaint. As such, Montoya's public policy claim is dependant upon his underlying age discrimination claim.

Since summary judgment has been granted on the age discrimination claim, summary judgment is similarly granted on the public policy claim.

### C.     Defamation

Montoya alleges that managers at "TWT made, and repeated, false statement [sic] about him." See Pl. Opp'n. at page 23. Essentially, Montoya alleges that Yates and McDaniel falsely informed Mackert and Jarvis about Montoya's poor performance and violations of company policy. TWT correctly points out that California Civil Code § 47(c) extends a conditional privilege against defamation to communications made without malice on subjects of mutual

interest. Noel v. River Hills Wilsons, Inc., 113 Cal. App.4th 1363, 1369 (2003). An employer's statements to employees regarding the reasons for another employee's termination of employment are privileged. King, 152 Cal. App.4th at 440. TWT asserts that Montoya cannot establish a defamation claim because he fails to meet his burden of showing that the statements were made with actual malice.

Montoya does not argue that Yates and McDaniel did not have a "common interest" with Mackert and Jarvis in communicating about Montoya's work performance. Rather, Montoya argues that Yates, McDaniel, Mackert, and Jarvis made the statements with malice.[16] However, TWT correctly points out that the burden is on Plaintiff to show malice in order to defeat the common interest privilege. Lundquist v. Reusser, 7 Cal. 4th 1193, 1202-03 (1994). Montoya cannot prove actual malice because he presents no evidence that Yates, McDaniel, Mackert or Jarvis "ha[d] no reasonable grounds for believing [their] statements to be true." Noel, 113 Cal. App.4th at 1374-75; see also King, 152 Cal. App.4th at 440. As described above, Montoya has admitted to several instances of misconduct, which formed the basis of his discipline and termination. Moreover, it is undisputed that Yates conducted an independent investigation of the unplanned service outages by contacting the NOC.

Lastly, Montoya's argument that Yates and McDaniel had actual malice because they did not investigate the facts behind the allegedly defamatory statements is unavailing. Mere negligence cannot constitute actual malice. Bierbower v. FHP, Inc., 70 Cal. App.4th 1, 9 (1999) ("[m]aliciousness cannot be derived from negligence.")

Accordingly, because Montoya fails to establish actual malice as a defense to the common interest privilege, summary judgment is granted. See King, 152 Cal. App.4th at 440; Noel, 113 Cal. App.4th at 1374-75.

**D.  Unfair Business Practice**

Montoya's unfair business practice claim is solely based upon his underlying age

---

[16] The court notes that Montoya misstates the law when it represents to the court that Defendant's have the burden to prove that the allegedly false statements were made without malice when, in fact, the opposite is true. See Lundquist, 7 Cal.4th at 1202-03.

discrimination claim.  <u>See</u> Pl. Opp'n. at page 26.  As summary judgment has been granted on the age discrimination claim, summary judgment is similarly granted on this claim.

## **ORDER**

Defendant TWT's motion for summary judgment is GRANTED.  The clerk is directed to enter judgment in favor of the Defendant and to close the case.

IT IS SO ORDERED.

**Dated:   September 25, 2009**              /s/ Anthony W. Ishii
                                     CHIEF UNITED STATES DISTRICT JUDGE